CLERK'S OFFICE U.S. DIST. COURT
AT LYNCHBURG, VA
FILED
for Roanoke
OCT 1 6 2007
JOHN F. CORCORAN, CLERK
BY: Tory Coleman
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | |
|---|---|
| MEBLIN XIOMAR FIGUEROA,<br>　　　Petitioner, | Civil Action No. 7:07CV00329 |
| v. | **MEMORANDUM OPINION** |
| UNITED STATES OF AMERICA,<br>　　　Respondent. | By: Hon. Norman K. Moon<br>United States District Judge |

Petitioner Meblin Xiomar Figueroa, a federal inmate proceeding pro se, brings this action as a motion to vacate, set aside, or correct sentence pursuant to 28 U.S.C. § 2255. Figueroa alleges in his § 2255 motion that his counsel was ineffective for: (1) failing to argue the entrapment defense; (2) inducing Figueroa to plead guilty; (3) failing to argue for a downward departure pursuant to United States Sentencing Guidelines 5K1.1; and (4) failing to seek "fast-track" consideration for Figueroa. Respondent filed a motion to dismiss and Figueroa responded, thus making the matter ripe for consideration.[1] Upon review of the submissions of the parties and the underlying criminal record, Criminal Case No. 6:05CR00024, the court finds that Figueroa waived his current claims in his plea agreement. Accordingly, the court finds that respondent's motion to dismiss must be granted.

I.

On July 28, 2005, Figueroa was named in a fourteen-count indictment in the Western District of Virginia. On April 12, 2006, Figueroa pleaded guilty to Counts Eight, Nine, Eleven, and Twelve of the indictment which charged him with possession with intent to distribute a measurable quantity of a mixture or substance containing cocaine, in violation of Title 21 U.S.C. § 841(a)(1) and

---

[1] Figueroa's response includes a request that the court grant summary judgment in his favor. He also informs the court that he plans to supplement his response with an affidavit from his brother. As the court determines that Figueroa's claims fail even if the allegations are taken as true, the court will not grant additional time to file the affidavit.

(b)(1)(C) (Counts Eight and Eleven), and possession of a firearm in furtherance of a drug trafficking crime, in violation of Title 18 U.S.C. § 924(c)(1) (Counts Nine and Twelve).

On January 29, 2007, the court conducted a sentencing hearing at which Figueroa was sentenced to a total term of 375 months of imprisonment. Figueroa did not appeal his conviction or sentence. He filed the current § 2255 motion on July 2, 2007.

## II.

To state a claim for relief under § 2255, a petitioner must prove that one of the following occurred: (1) that his sentence was "imposed in violation of the Constitution or laws of the United States"; (2) that "the court was without jurisdiction to impose such a sentence"; or (3) that "the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack." 28 U.S.C. § 2255 (2006). Figueroa bears the burden of proving grounds for a collateral attack by a preponderance of the evidence. Hall v. United States, 30 F. Supp. 2d 883, 889 (E.D. Va. 1998); Jacobs v. United States, 350 F.2d 571, 574 (4th Cir. 1965).

## III.

It is settled circuit law that a "criminal defendant may waive his right to attack his conviction and sentence collaterally, so long as the waiver is knowing and voluntary." United States v. Lemaster, 403 F.3d 216, 220 (4th Cir. 2005). Waivers of collateral review are analyzed under a two-part analysis in which both the validity and the scope of the waiver are considered. See, e.g., United States v. Attar, 38 F.3d 727, 731-33 (4th Cir. 1994) (holding that a waiver will be enforced if the record establishes that the waiver is valid and that the issue being appealed is within the scope of the waiver). The validity of a waiver "depends on whether the defendant knowingly and intelligently

2

agreed to waive the right." Id. at 731-32. "[I]n the absence of extraordinary circumstances, the truth of sworn statements made during a Rule 11 colloquy is conclusively established, and a district court should . . . dismiss any § 2255 motion that necessarily relies on allegations that contradict the sworn statements." Lemaster, 403 F.3d at 221-22; see also United States v. Brown, 232 F.3d 399, 405-06 (4th Cir. 2000) (holding that a defendant's statements during the plea colloquy and evidence that he discussed the terms of the waiver provision with counsel and fully understood them provide powerful evidence that the waiver is valid). If the court determines that a petitioner's allegations, viewed against the record of the Rule 11 plea hearing, are so "palpably incredible, so patently frivolous or false as to warrant summary dismissal," the court may dismiss the § 2255 motion without a hearing. Lemaster, 403 F.3d at 220 (internal quotations and citations omitted). Although the validity determination is often made based on the "adequacy of the plea colloquy–specifically, whether the district court questioned the defendant about the . . . waiver–the issue ultimately is 'evaluated by reference to the totality of the circumstances.'" United States v. Blick, 408 F.3d 162, 169 (4th Cir. 2005) (quoting United States v. General, 278 F.3d 389, 400 (4th Cir. 2002)). Thus, the determination "'must depend, in each case, upon the particular facts and circumstances surrounding that case, including the background, experience, and conduct of the accused.'" Id. (quoting United States v. Davis, 954 F.2d 182, 186 (4th Cir. 1992)).

That does not end the inquiry, however. The court must also consider the scope of the plea agreement waiver: that is, whether it prevents the court from considering the particular claims the defendant asserts in his § 2255 motion. The United States Court of Appeals for the Fourth Circuit has distinguished a narrow class of claims that fall outside the scope of an enforceable waiver of direct appeal rights. Issues that a defendant could not reasonably have foreseen when entering into

3

a plea agreement, such as the denial of counsel at any stage of the proceedings following the entry of the plea, the imposition of a sentence above the statutory maximum, or the imposition of a sentence based on a constitutionally impermissible factor such as race, fall outside the scope of the waiver.[2] Attar, 38 F.3d at 732; United States v. Marin, 961 F.2d 493, 496 (4th Cir. 1992); see also Blick, 408 F.3d at 169-71. Thus, in addition to evaluating the validity of Figueroa's guilty plea and waiver of § 2255 rights, the court must determine whether each of his § 2255 claims falls within the scope of that waiver.

Here, the record fully establishes that Figueroa knowingly and intelligently entered a valid guilty plea and waived his right to collaterally attack his sentence, including any proceeding brought under § 2255. In his plea agreement, Figueroa specifically agreed to "waive [his] right to collaterally attack, pursuant to Title 28, United States Code, Section 2255, the judgment and any part of the sentence imposed upon [him] by the Court." (Resp't Ex. A, Plea Agreement 6.) The language and meaning of the § 2255 waiver is clear and unmistakable, and both Figueroa and his attorney represented by their initials and signatures on the plea agreement that Figueroa had been fully advised of, and understood, its terms. Figueroa further waived "any claim that I may have for ineffective assistance of counsel known and not raised by me with the Court at the time of sentencing." (Resp't Ex. A, Plea Agreement 9.) Additionally, Figueroa does not dispute that he read and understood the collateral attack waiver provision nor does he claim that the waiver provision of that agreement is invalid.

Moreover, pursuant to Federal Rule of Criminal Procedure 11, before accepting the guilty

---

[2] In Lemaster, the court implicitly acknowledged that these discrete claims would also be considered outside the scope of a valid plea agreement waiver of § 2255 rights. 403 F.3d at 220 n.2.

4

plea, the court engaged in a lengthy colloquy with Figueroa on April 12, 2006.[3] During the plea colloquy Figueroa indicated to the court that he was born on July 30, 1971, that he had completed twelfth grade, and that he was not under the influence of alcohol or of any drug that hampered his ability to understand the courtroom proceedings. The court reviewed with Figueroa the constitutional rights he forfeited by pleading guilty and Figueroa indicated that he understood the rights he was giving up. The court asked Figueroa whether he and his attorney had reviewed the plea agreement with an interpreter and whether Figueroa understood the plea agreement, to which Figueroa gave an affirmative answer. Figueroa affirmed that he had been given ample opportunity to discuss the plea agreement and the sentencing guidelines with his attorney and that he was fully satisfied with the counsel, representation, and advice given by his attorney in the matter. Figueroa's counsel specifically indicated to the court that Figueroa understood the waiver of the right to collaterally attack his sentence. The United States Attorney also brought the collateral attack waiver to Figueroa's attention. Figueroa denied that anyone had made any promise to him, outside the provisions of the plea agreement, or otherwise induced him to plead guilty. The court determined, at the conclusion of the plea colloquy, that Figueroa's plea was knowing and voluntary. Therefore, the court finds that Figueroa's representations at the plea colloquy support a finding that the waivers in the written plea agreement were knowingly and voluntarily made. Accordingly, the court concludes that Figueroa's waiver of his right to bring a collateral attack under § 2255 is valid and enforceable.

Finding that the waiver is valid, the court must now determine whether Figueroa's claims are

---

[3] The court notes that Figueroa was assisted by an interpreter who was duly qualified and sworn during this plea colloquy. However, the transcript indicates that Figueroa answered several of the court's questions in English.

5

included within the scope of the waiver. After reviewing the record, the court finds that none of the factors that the Fourth Circuit applied in Attar are applicable here. See Attar, 38 F.3d at 732-33. All of Figueroa's claims pertain to times prior to Figueroa signing the plea agreement and, thus, could reasonably have been foreseen when he entered his plea. Figueroa does not claim that his sentence of 375 months exceeded the statutory maximum for the charges for which he was convicted nor does he allege that his sentence was premised on any constitutionally impermissible factor such as race. A claim of ineffective assistance of counsel at sentencing proceedings only falls outside the scope of the collateral attack waiver if the defendant has been completely deprived of counsel. Attar, 38 F.3d at 732-33. A claim that counsel was generally ineffective does not suggest that the defendant was wholly deprived of counsel and, thus, such claims do not fall outside the scope of the collateral attack waiver.[4] See Lemaster, 403 F.3d at 219-20. Therefore, Figueroa's claims fall within the

---

[4] Even assuming that Figueroa's claims of ineffective assistance of counsel are excepted from the waiver in the plea agreement, they fail on the merits. Figueroa must prove that counsel's representation fell below "an objective standard of reasonableness" and that, but for counsel's errors, there is a reasonable probability that he would not have pleaded guilty and would have insisted on going to trial. Strickland v. Washington, 466 U.S. 668, 687-94 (1984); Hooper v. Garraghty, 845 F.2d 471, 475 (4th Cir. 1988). Disregarding the fact that Figueroa declared in open court on several different occasions, including after the court denied his motion to appoint new counsel, that he was satisfied with the representation of his attorney, Figueroa fails to even allege much less demonstrate that he would have rejected the plea agreement and insisted on going to trial absent counsel's alleged errors. Figueroa's claim that counsel failed to argue an entrapment defense at an unspecified time fails as there was no need for counsel to make any arguments of defense as Figueroa chose to plead guilty. Further, a defendant who pleads guilty waives all claims relating to constitutional violations that occur before the entry of the plea. See Tollett v. Henderson, 411 U.S. 258, 266 (1973). Moreover, Figueroa's claim that counsel failed to seek a substantial assistance downward departure also fails as departures outside the guidelines rest in the discretion of the trial judge and are to be infrequent. U.S.S.G., Ch. 1 Pt. A, § 4(b). Figueroa does not provide the court with any proof to support his contention that he did indeed provide the government with substantial assistance. Also, the government, not Figueroa's counsel, must make the motion for substantial assistance. Furthermore, Figueroa's claim that counsel failed to seek "fast-track" consideration fails for several reasons. "Fast-track" programs encourage a defendant in an immigration case who will ultimately plead guilty to plead within a specified period of time in exchange for a reduced sentence. United States v. Ramirez-Ramirez, 365 F. Supp. 2d 728, 731 (E.D. Va. 2005). Figueroa seems to ignore the fact that his case concerned narcotics and firearms, not immigration. Also, a "fast-track" program is not available in the Western District of Virginia. Finally, Figueroa's claim that counsel induced him to plead guilty fails. First, counsel made a reasonable strategic move in advising Figueroa to plead guilty. In so doing, Figueroa avoided being convicted of more charges, which carried the possibility of a greater sentence. He also gained a three-point reduction in offense level for acceptance of responsibility and stood a chance to earn a further reduction in sentence for substantial assistance to law enforcement. These options would not have been available after a conviction at trial. Moreover, counsel believed, as admitted by Figueroa, that the government had a

scope of the plea agreement waiver and are, therefore, not cognizable claims for post conviction relief in a motion brought pursuant to § 2255. Accordingly, the court will grant respondent's motion to dismiss and will deny Figueroa's motion for relief pursuant to § 2255.[5]

## IV.

"Plea bargains rest on contractual principles, and each party should receive the benefit of its bargain." United States v. Ringling, 988 F.2d 504, 506 (4th Cir. 1993). Figueroa knowingly and intelligently agreed to waive his right to collaterally attack his sentence in exchange for several concessions made by the United States, and he was sentenced in the manner to which he agreed. The United States has adhered to its part of the plea bargain. Granting Figueroa relief on the issues he has raised, under these circumstances, would unfairly deny the United States an important benefit of its bargain. Accordingly, the court will grant the motion to dismiss. An appropriate Order shall be issued this day.

The Clerk of the Court is directed to send copies of this Memorandum Opinion and accompanying Order to petitioner and counsel of record for respondent.

---

strong case against him. Figueroa sold cocaine on seven separate occasions and guns on three separate occasions to a confidential informant. These controlled buys were recorded by electronic surveillance equipment. Had the case gone to trial, the jury had ample evidence to find Figueroa guilty of a conspiracy involving a much higher drug amount and he would have lost the sentencing advantages he gained by pleading guilty. Under these circumstances, the claim that counsel erred in advising Firgueroa to plead guilty fails under both prongs of Strickland. Figueroa vaguely complains that counsel told him he would not receive 30 years of imprisonment and that he did not understand the plea agreement in full because he is not a native English speaker. Even if counsel made these errors, the advice to accept the plea agreement was not unreasonable, given the great sentencing benefits to be gained through the plea agreement. Therefore, Figueroa's allegations fail to support a claim of ineffective assistance.

[5] Despite the government's contention, ineffective assistance of counsel claims are not procedurally defaulted if not pursued on direct appeal and may be raised for the first time in a § 2255 motion without a showing of cause and actual prejudice. Massaro v. United States, 538 U.S. 500, 504-09 (2003); United States v. DeFusco, 949 F.2d 114, 120-21 (4th Cir. 1991).

7

**ENTER:** This 16th day of October, 2007.

_____
United States District Judge